Joel M. Miller (JM-2018)
Charles R. Jacob III (CJ-4143)
Jeremy M. Sher (JS-1422)
250 Park Avenue
New York, New York 10177
(212) 336-3500

*Attorneys for Plaintiff*
*UBS Real Estate Securities Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UBS REAL ESTATE SECURITIES INC., | Case No.: 07 Civ. 3702 (MGC) |
| Plaintiff, | ECF Case |
| -against- | **COMPLAINT** |
| SILVER STATE FINANCIAL SERVICES, INC. d/b/a SILVER STATE MORTGAGE, | |
| Defendant. | |

Plaintiff UBS Real Estate Securities Inc. ("UBS"), by its attorneys Miller & Wrubel P.C., as and for its Complaint against defendant alleges as follows:

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### The Parties

1. UBS is a corporation organized under the laws of the State of Delaware with its principal place of business at 1285 Avenue of the Americas, New York, New York 10019. UBS is engaged in the business of, inter alia, purchasing, trading and securitizing mortgages.

2. On information and belief, defendant Silver State Financial Services, Inc. d/b/a Silver State Mortgage ("Silver State") is a corporation organized

under the laws of the State of Nevada with its principal place of business at 1349 Galleria Drive, Suite 200, Henderson, Nevada 89014. On further information and belief, Silver State is engaged in the business of, <u>inter</u> <u>alia</u>, originating and selling mortgages.

### Jurisdiction

3.      UBS brings this action under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy in this action exceeds $75,000, exclusive of interest and costs, and the action is brought between citizens of different states. UBS is a citizen of Delaware and New York, and Silver State is a citizen of Nevada.

4.      Silver State is subject to personal jurisdiction in this Court because, as more fully set forth below, it transacted business in the State of New York and contracted to supply goods and services in the State of New York, and this action arises out of Silver State's business transactions and contracts to supply goods and services in the State of New York.

### Venue

5.      This action is properly brought in the Southern District of New York pursuant to 28 U.S.C. § 1391(a) and (c). Jurisdiction in this action is founded on diversity of citizenship and Silver State is a corporation subject to personal jurisdiction in this District.

**Silver State's Breach of**
**the Purchase Agreement**

A. **The Purchase Agreement**

      6.     UBS and Silver State entered into a Seller's Purchase, Warranties and Interim Servicing Agreement dated as of May 1, 2005, as amended and supplemented from time to time (collectively the "Purchase Agreement").

      7.     In the Purchase Agreement, Silver State contracted to sell to UBS certain first and second lien residential Mortgage Loans (as defined in the Purchase Agreement), subject to the terms and conditions in the Purchase Agreement.

      8.     Pursuant to § 3.05 of the Purchase Agreement, entitled "Repurchase of Mortgage Loans With Early Payment Default," Silver State agreed to repurchase Mortgage Loans from UBS in the event of certain delinquencies (as set forth below), or, at UBS' option, indemnify UBS as to any Early Payment Default Loans not repurchased. Section 3.05 of the Purchase Agreement provides as follows:

> If the first, second or third scheduled Monthly Payment due to the Purchaser [UBS] or due following the Closing Date [as defined] becomes one (1) or more scheduled Monthly Payments delinquent, then the Company [Silver State], at the Purchaser's option, shall (a) promptly repurchase the related Mortgage Loan (and the Servicing Rights thereto) from the Purchaser in accordance with the procedures set forth in Section 3.03 hereof, however, any such repurchase shall be made at the Repurchase Price [as defined], (b) indemnify the Purchaser in accordance with Section 5.01 hereof, or (c) substitute a mortgage loan acceptable to the Purchaser in accordance with Section 3.03 hereof.

      9.     Thus, the Purchase Agreement expressly and unambiguously gave UBS the right to cause Silver State to repurchase, and imposed on Silver State an

3

obligation to repurchase, at the Repurchase Price, any Early Payment Default Loans as to which UBS requested repurchase.

10. The Mortgage Loans listed on Exhibit A hereto are all Early Payment Default Loans as defined in the Purchase Agreement.

11. On several occasions, commencing as early as October 2006, and continuing through April 2007, UBS gave Silver State written notice of such Early Payment Default Loans and exercised UBS' option to require Silver State to repurchase such Early Payment Default Loans, all in accordance with the terms of the Purchase Agreement.

12. UBS stood ready, willing and able, at all relevant times, to reconvey the Mortgage Loans on Exhibit A to Silver State.

13. UBS has fully performed all its obligations under and relating to the Purchase Agreement.

14. Silver State did not repurchase the Early Payment Default Loans listed on Exhibit A hereto as requested by UBS. Therefore, Silver State is in breach of its obligations under the Purchase Agreement.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract – Damages for Failure**
**to Repurchase Early Payment Default Loans)**

15. UBS repeats and realleges the allegations of paragraphs 1 - 14, above, as if fully set forth herein.

16. UBS is entitled, by means of an award of damages, to be put in the same position economically that they would have been in had Silver State performed its repurchase obligations under § 3.05 of the Purchase Agreement.

4

17. The aggregate Repurchase Price due and owing to UBS for the Early Payment Default Loans, as of April 5, 2007, was $13,961,440.01, no part of which has been paid despite due demand therefor.

18. The Court should enter a money judgment in favor of UBS and against Silver State in the amount of $13,961,440.01, plus interest at the statutory rate of 9% from the date(s) of breach until the date of judgment.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract – Declaration as to Mitigation of Losses)

19. UBS repeats and realleges the allegations of paragraphs 1 - 18, above, as if fully set forth herein.

20. UBS, as the non-breaching party, should not be put in a worse position with respect to loss mitigation than if Silver State had not breached the terms of the Purchase Agreement by its failure to repurchase.

21. Pursuant to pre-existing contractual arrangements with UBS, loss mitigation with respect to the Early Payment Default Loans is conducted by the Servicers, which service the Mortgage Loans in the ordinary course of business. UBS usually does not have a direct role in loss mitigation, as loss mitigation is contractually the responsibility of the Servicers.

22. The Servicers dispose of the properties underlying defaulted Mortgage Loans by means of foreclosures and/or sales conducted within certain guidelines that the Servicers maintain (the "Servicer Guidelines").

23. In addition, a secondary market known as the "scratch-and-dent" market exists, in which defaulted Mortgage Loans can be sold.

5

24. On information and belief, a controversy exists and is ripe for adjudication as to UBS' mitigation of losses because Silver State is disputing or will dispute whether UBS has mitigated its losses properly.

25. UBS is entitled to a declaration that Silver State has no defense relating to mitigation of damages so long as Early Payment Default Loans are (a) foreclosed on or sold by the Servicers according to the Servicer Guidelines or (b) sold by UBS in an arms-length transaction in the scratch-and-dent market.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Indemnification for Losses and Attorneys' Fees)

26. UBS repeats and realleges the allegations of paragraphs 1 – 25, above, as if fully set forth herein.

27. On information and belief, the Mortgage Loans listed on Exhibit A hereto are in breach of certain representations and warranties set forth in §§ 3.01 and 3.02 of the Purchase Agreement.

28. Pursuant to §§ 3.03 and 5.01 of the Purchase Agreement, UBS is entitled to indemnification for its reasonable and necessary attorneys' fees and related costs and expenses arising from Silver State's breach of its contractual obligations as set forth herein.

WHEREFORE, UBS demands judgment in its favor and against Silver State as follows:

(i) on its First Cause of Action, awarding UBS as against Silver State the sum of $13,961,440.01, plus interest at the statutory rate of 9% from the date(s) of breach until the date of judgment;

        (ii)    on its Second Cause of Action, declaring that Silver State has no defense relating to mitigation of damages so long as Early Payment Default Loans are (a) foreclosed on or sold by the Servicers according to the Servicer Guidelines or (b) sold by UBS in an arms-length transaction in the scratch-and-dent market;

        (iii)    on its Third Cause of Action, awarding UBS as against Silver State the amount of UBS' attorneys' fees and related costs and expenses arising from Silver State's breach of its contractual obligations as set forth herein; and

        (iv)    granting such other and further relief as this Court may deem just and proper in the circumstances.

Dated: May 10, 2007

                            MILLER & WRUBEL P.C.

                        By:  /s/ Joel M. Miller
                            Joel M. Miller (JS-2018)
                            Charles R. Jacob III (CJ-4143)
                            Jeremy M. Sher (JS-1422)
                            250 Park Avenue
                            New York, New York 10177
                            (212) 336-3500

                            Attorneys for Plaintiff
                            UBS Real Estate Securities Inc.