UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UBS REAL ESTATE SECURITIES INC., | Case No.: 07 Civ. 3702 (MGC) |
| Plaintiff, | ECF Case |
| -against- | **DECLARATION OF JOEL M. MILLER IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT** |
| SILVER STATE FINANCIAL SERVICES, INC. d/b/a SILVER STATE MORTGAGE, | |
| Defendant. | |

JOEL M. MILLER hereby declares, under penalty of perjury:

1. I am a member of the Bar of this Court and the firm of Miller & Wrubel P.C. ("Miller & Wrubel"), attorneys for plaintiff in the above-entitled action. I am familiar with the facts and circumstances of this action set forth herein.

2. I submit this declaration pursuant to Local Civil Rule 55.2(b), in support of the motion of plaintiff UBS Real Estate Securities Inc. ("UBS") for a default judgment against defendant Silver State Financial Services, Inc. d/b/a Silver State Mortgage ("Silver State").

**Commencement of the Action and Service of Process**

3. This action was commenced on May 10, 2007 by the filing of the Complaint. A copy of the Complaint is attached hereto as Exhibit A.

4. Copies of the Summons, Complaint, Rule 7.1 Statement, Individual Practices of Judge Miriam Goldman Cedarbaum, Individual Practices of Magistrate Judge Kevin Nathaniel Fox, and ECF Instructions, Procedures, and Guidelines were served on defendant Silver State on May 15, 2007 by personal service on Marika

Hymer, an agent authorized to receive service for defendant Silver State, and proof of such service thereof was filed on May 24, 2007. A copy of the Affidavit of Service is attached hereto as Exhibit B.

## Subject Matter and Personal Jurisdiction

5. UBS is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York.

6. On information and belief, Silver State is a corporation organized under the laws of the State of Nevada with its principal place of business in Henderson, Nevada.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that UBS and Silver State are citizens of different states and the matter in controversy, exclusive of interest and costs, exceeds $75,000.00.

8. Silver State is subject to personal jurisdiction in this Court pursuant to §§ 301 and 302 of the New York Civil Practice Law and Rules because it transacted business in the State of New York and contracted to supply goods and services in the State of New York, and this action arises out of Silver State's business transactions and contracts to supply goods and services in the State of New York.

## Silver State's Default

9. Silver State's time to answer or otherwise respond to the Complaint ended on June 4, 2007. To date, Silver State has not answered or otherwise responded to the Complaint.

10. Silver State, being a corporation organized under the laws of the State of Nevada, is not in the military, an infant or an incompetent person.

11. Silver State appears to be represented for certain purposes by Irma L. Gloria, Esq. Ms. Gloria has informed me that she is a Nevada attorney and is not admitted to the Bar of this Court. In response to a request from Ms. Gloria for additional time for Silver State to retain New York counsel, UBS agreed not to move for a default judgment against Silver State before June 18, 2007. Neither Ms. Gloria nor any other counsel has appeared for Silver State in this action.

12. On June 11, 2007, Silver State, purporting to act pro se notwithstanding that it is a corporation, requested from the Court an extension until June 14, 2007 to answer the Complaint. Silver State did not answer the Complaint by June 14, 2007, or at any time thereafter.

13. On June 21, 2007, the Court's law clerk held a conference call with Ms. Gloria and UBS' counsel regarding Silver State's failure to appear by counsel admitted to the Bar of this Court. Ms. Gloria stated that Silver State had not retained New York counsel. The parties agreed that Silver State would have until July 5, 2007 to retain New York counsel.

14. To date, no New York counsel has appeared for Silver State and Silver State has remained in default in responding to the Complaint.

15. On July 10, 2007, the Clerk of the Court entered a Certificate of Default against Silver State. The Clerk's Certificate of Default is attached hereto as Exhibit C.

16. Pursuant to Order, by letter dated June 13, 2007, we provided notice to Silver State, with a copy to the Court, of the Order setting the preliminary

conference scheduled for October 11, 2006. That letter and the Court's order are attached hereto as Exhibit D.

17.     Silver State did not appear at the conference on October 11, 2006. I appeared on behalf of UBS and requested the Court's leave, which was granted, to move for a default judgment against UBS.

**No Novel Issues of Law**

18.     This motion raises no novel issues of law. Accordingly, UBS respectfully requests that the Court waive the requirement of Local Civil Rule 7.1 that UBS submit a separate memorandum of law.

19.     Where, as here, "'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.) (quoting C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 3d § 2688 at 58-59 (3d ed. 1998)).

**UBS' Claims**

20.     The factual allegations of the Complaint relevant to this motion are summarized below. The amount of UBS' damages, other than legal fees, is addressed in the accompanying Declaration of Brian Bowes, dated November 27, 2007 (the "Bowes Decl.").

21.     UBS and Silver State entered into a Seller's Purchase, Warranties and Interim Servicing Agreement dated as of May 1, 2005, as amended and supplemented (the "Purchase Agreement"). (Compl. ¶ 6)

22.     In the Purchase Agreement, Silver State contracted to sell to UBS certain residential Mortgage Loans (as defined in the Purchase Agreement), subject to the terms and conditions in the Purchase Agreement. (Compl. ¶ 7)

23.     Pursuant to § 3.05 of the Purchase Agreement, entitled "Repurchase of Mortgage Loans With Early Payment Default," Silver State agreed to repurchase Mortgage Loans from UBS in the event of certain delinquencies (as set forth below), or, at UBS' option, indemnify UBS as to any Early Payment Default Loans not repurchased. Section 3.05 of the Purchase Agreement provides as follows:

> If the first, second or third scheduled Monthly Payment due to the Purchaser [UBS] or due following the Closing Date [as defined] becomes one (1) or more scheduled Monthly Payments delinquent, then the Company [Silver State], at the Purchaser's option, shall (a) promptly repurchase the related Mortgage Loan (and the Servicing Rights thereto) from the Purchaser in accordance with the procedures set forth in Section 3.03 hereof, however, any such repurchase shall be made at the Repurchase Price [as defined], (b) indemnify the Purchaser in accordance with Section 5.01 hereof, or (c) substitute a mortgage loan acceptable to the Purchaser in accordance with Section 3.03 hereof.

(Compl. ¶ 8)

24.     The Mortgage Loans listed on Exhibit A to the Complaint are Early Payment Default Loans as defined in the Purchase Agreement. (Compl. ¶ 10)

25.     UBS gave Silver State written notice of the Early Payment Default Loans and exercised its option to require Silver State to repurchase said loans in accordance with the terms of the Purchase Agreement. (Compl. ¶ 11)

26.     Silver State failed to repurchase said Mortgage Loans from UBS or indemnify UBS with respect thereto. (Compl. ¶¶ 14, 28)

**UBS' Damages**

27. The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997 (quoting Fostok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

28. As described in the Bowes Decl., the damages UBS seeks arise entirely from Silver State's breach of its obligations under a Purchase Agreement, and can be readily determined by reference to the Purchase Agreement and the value of the Mortgage Loans.

29. In addition to Silver State being liable to UBS for breach of contract damages, pursuant to §§ 3.03 and 5.01 of the Purchase Agreement UBS is entitled to indemnification for its reasonable and necessary attorneys' fees, and related costs and expenses, arising from Silver State's breach of its contractual obligations to UBS. (Compl. ¶ 28)

30. UBS requests reasonable costs, attorneys' fees and expenses incurred through September 30, 2007 in connection with this action in the total amount of $15,057.39, which is justly due and owing pursuant to Sections 3.03 and 5.01 of the Purchase Agreement, and no part of which has been paid. The hourly rates, hours billed and expenses incurred are commensurate to those of high-quality New York financial services law firms working on similar matters. With respect to expenses and costs incurred by UBS in connection with this matter, Miller & Wrubel charged UBS for such items as photocopying, postage and court and process server fees. Attached hereto as Exhibit E are monthly statements showing the hours spent by each attorney working on

this matter, the reasonable hourly rate for each attorney and a description of the services provided, and the itemized expenses.

       31.     Accordingly, UBS requests that the Court grant a Default Judgment against Silver State in the amount requested.  A proposed Default Judgment is attached as Exhibit 1 to UBS' Notice of Motion.

       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 27th day of November, 2007

                                /s Joel M. Miller
                                Joel M. Miller